UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TIMOTHY MALADY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:13CV80 SNLJ ) |
| CORIZON, Inc., et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff is a prisoner at the Southeast Correctional Center ("SECC") in Charleston, Missouri. Plaintiff alleges that the defendant medical personnel violated his civil rights with regard to his medical treatment while incarcerated. This Court previously granted summary judgment to defendants on plaintiff's Claims 1, 2, 4, 5, 6, and 7. Summary judgment was granted as to Claim 3 --- which primarily pertained to the confiscation and delayed replacement of plaintiff's orthotic boots --- only to the extent it claims deliberate indifference to plaintiff's serious medical needs. What remains is plaintiff's retaliation claims related to Claim 3. Two defendants are identified in the complaint with respect to the retaliation claim: defendants Dr. Michael Hakala and Stephanie Kastings-Novak. Those two defendants have moved for summary judgment (#93). The matter has been fully briefed and is ripe for disposition.

**I.  Factual Background**

Plaintiff injured his hip in a motorcycle accident in 1978. His hip was surgically repaired with metal screws and plates, and one leg is shorter than the other as a result. Plaintiff has been incarcerated since the 1980s, and he states that his hip and lower back

1

pain has increased with time. He wears special orthotic boots to remedy the difference in leg length. Plaintiff also takes medication to treat his high blood pressure.

At an October 16, 2009 appointment, defendant Hakala noted that plaintiff's two-year-old orthotic boots were worn and would require repair or replacement. Hakala submitted a referral request for the repair of the boots, and defendant nurse Kastings-Novak told plaintiff he had to relinquish the boots. Plaintiff alleges that he resisted giving up his boots because he says walking without the boots causes him pain. Plaintiff alleges that Kastings-Novak forced him to turn over the boots, knowing it would cause him pain. Both Hakala and Novak told plaintiff that he could file more IRRs and grievances as a result. On December 7, 2009, the orthotics company reported that they had lost the boots and would order him a new pair. Then on December 31, they advised they had found the boots but that they were beyond repair. New boots were ordered. Plaintiff finally received the new boots (after they were approved, shipped, fitted, shipped, outfitted with the appropriate lift, and shipped again) on February 15, 2010.

Plaintiff complained of increasingly bad hip pain. Dr. Hakala ordered x-rays be taken of plaintiff's hips on June 27, 2010 and requested that the x-rays be compared to the x-rays that had been obtained in 2007. Although degenerative changes of plaintiff's spine and postsurgical changes of the hip's fracture repair were noted on the x-ray, plaintiff's hip condition was similar to the 2007 x-ray study results. Plaintiff was not sent to a specialist. The grievance was denied but defendant Novak noted on the grievance response that plaintiff should keep his appointment on September 2 to address any further medical concerns.

Plaintiff also states that, on several occasions, his prescription medication was not refilled in a timely manner. Defendants explain that the prison pharmacy sometimes ran

low on medications and was unable to fully fill prescriptions, but they state that plaintiff could have received each medication by standing in a line at the pharmacy and receiving his medications dose-by-dose. Plaintiff asserts that more than 100 prisoners stood in those lines and that it was unreasonable to expect him to wait in such a long line in light of his painful hip and back. In addition, plaintiff suggests that the prescription dispensing process is poorly-run and that a group of nurses freely take lengthy "smoke breaks" leaving an understaffed pharmacy to dispense medications and resulting in long lines. Plaintiff therefore went without his medications against the advice of defendants "20 or more" times over a few-year period.

Finally, plaintiff states that his pain has not been well managed. Plaintiff was prescribed Tramadol for his pain on May 30, 2012. Plaintiff says that this is the only time that a Corizon physician has prescribed an effective pain medication. Plaintiff's dosage was increased over time, and he remained on Tramadol until April 29, 2013. After that time, plaintiff alleges that the Tramadol prescriptions were "denied by regional medical directors." Plaintiff states that defendant Hakala prescribed Tramadol on May 24 and June 11, 2013, but that the prescription was never provided to him.

Plaintiff filed his complaint in this action on May 23, 2013. Most of plaintiff's claims were resolved on an earlier summary judgment motion, but the defendants' motion did not address plaintiff's retaliation claims. Plaintiff states in his complaint that

> refusing to refer me to an orthopedic surgeon for over 16 years, taking my medical boots, refusing to provide me with adequate strength pain relievers, refusing to examine me, refusing to examine my x-rays with me, all of these actions forcing me to suffer unconstitutional levels of pain and sufferings, and through all of this, the referencing of me filing medical complaints, screams anger and frustrations, along with the hostility from SECC medical staff, Dr. Hakala and Nurse Novak, screams retaliation.

3

(#1 at 14.)

Defendants Hakala and Kastings-Novak have again filed for summary judgment.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

4

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

With these principles in mind, the Court turns to the discussion.

## III. Discussion

Plaintiff claims that defendants Hakala and Kastings-Novak retaliated against him in response to his filing informal review requests and grievances related to his healthcare. To prevail on a § 1983 claim for retaliation in violation of the First Amendment, plaintiff must demonstrate "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013).

Although plaintiff's retaliation claim is presented in Claim 3, which pertains to his orthopedic boots, plaintiff also mentions the denial of his blood pressure medication, refusal to refer him to an orthopedic surgeon, inadequate pain medicine, denial of examinations, and refusals to examine his x-rays with him as having retaliatory motives. The Court will address each of those matters.

### A. Orthopedic boots

Plaintiff claims that defendants confiscated his boots for "repair" (when they should have been replaced) in retaliation for his frequent medical complaints. He states that the confiscation of the boots left him with no "winter footware," and he states that the defendants had no intention of returning the boots to him until he started filing complaints. However, it is undisputed that the boots were extremely worn, and the record shows that plaintiff had a pair of tennis shoes with inserts (which would have been appropriate footwear for October). Furthermore, defendant Hakala submitted a referral request for repair of the boots on October 16, 2009 --- that was four days before plaintiff's first complaint filed about the boots on October 20, 2009. Although the boots were lost, it appears undisputed that the defendants were not responsible for that delay. Despite that fact, defendant Kastings-Novak apologized for the delay in writing. These facts do not support that defendants confiscated and withheld the boots in retaliation for anything, and summary judgment will be granted to defendants.

### B. Blood pressure medication

Defendants deny that they denied plaintiff his blood pressure medication. Rather, when refills of plaintiff's medication were unavailable, plaintiff was permitted to obtain his medication dose-by-dose from the medication window. Although plaintiff contends that he was unable to obtain medication dose-by-dose because it was too painful for him to stand in the long medication window line, defendants point out that defendants Hakala and Kastings-Novak are not implicated in these facts. Plaintiff responds that his retaliation claims include actions of additional defendants including "regional medical directors, Dr. Thomas Bredeman, Dr. Ruane Stamps and possibly defendant Corizon, along with unnamed Corizon employees." (#98 at 1.) Plaintiff named Bredeman and

Stamps as defendants, but plaintiff did not allege they played a role in the refill/pharmacy problems he faced. Plaintiff suggests in his memorandum that Kastings-Novak inspired her coworkers to laugh at and "inflict antagonisms" on plaintiff, but plaintiff cannot support that Kastings-Novak told or otherwise inspired her coworkers to take any "adverse action" that would chill plaintiff's continuing to seek medical care and file complaints regarding that care. As defendants pointed out, plaintiff states he failed to get his blood pressure medicine 20 times over a "few year period." Long lines at the pharmacy are unfortunate, but requiring plaintiff to wait in those lines is not the sort of adverse action that would chill the exercise of protected activity. The relative infrequency of plaintiff's missed doses is an important factor in this analysis.[1] Summary judgment will be granted to defendants on this issue.

### C. Orthopedic consultation

Plaintiff appears to argue that Dr. Hakala denied plaintiff's request for an orthopedic consult in 2010. At the time, plaintiff had requested an orthopedic consultation for his left hip. Dr. Hakala ordered an x-ray and that it be compared to a 2007 x-ray. Defendants point out that the x-ray revealed no change, and, on that medical basis, he declined to refer plaintiff to an orthopedic surgeon. There is no evidence of retaliation here in light of the medical record evidence. Further, plaintiff does not point to any IRR, grievance, or lawsuit that would have inspired Hakala to retaliate against him.[2] Moreover, Hakala did order an x-ray at plaintiff's request; the fact that he

---

[1] In his Surreply (#107), plaintiff states that in fact he was denied his medication for days to months at a time; he states he suffered the loss of hundreds or thousands of doses. This does not line up with plaintiff's complaint, however, nor does plaintiff provide any evidentiary detail for these statements.

[2] Although plaintiff states now that the x-ray showed changes to his spine and that such spinal injury required a referral, this appears to be the first time he has made such a claim. Plaintiff's complaint indicated he had not seen

7

determined no referral need to be made does not suggest he did so in order to chill any constitutionally protected activity.

>   D.   **Pain medicine**

Plaintiff's deliberate indifference claim with regard to pain medicine was that defendant Hakala had prescribed ibuprofen instead of narcotic pain medicine. As this Court held, plaintiff's "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Plaintiff also claimed that defendants denied him effective pain medication as retaliation for his frequent medical complaints. Plaintiff was eventually prescribed Tramadol, which was effective, and Dr. Hakala ultimately increased plaintiff's Tramadol dose at plaintiff's request. After being prescribed Tramadol for approximately two years, however, Dr. Bredeman (the regional medical director) denied the renewal of that prescription on April 24, 2013; Dr. Hakala prescribed Tramadol again on May 16, 2013, but plaintiff alleges Dr. Stamps also denied the prescription. (#1 at 15.)

However, plaintiff stated in his response memorandum that he understands he has been put on a list of "problem complaint filers" and that he was told by defendant Corizon's employee that those offenders' medical requests are being "slow[ed] down" to create obstacles and discourage inmates from filing complaints. (#98 at 8-9.) However, plaintiff's complaint did not identify Bredeman or Stamps as defendants with respect to the retaliation claim; his discussion of their involvement in the pain medication denial was made in connection with his deliberate indifference claim. Plaintiff only discusses

---

the x-ray report, so he may not have known about the result until discovery in this matter. However, he never amended his complaint nor did he even make such an argument on summary judgment.

Hakala and Kastings-Novak as having retaliated against him for his frequent medical complaints. Because it is undisputed that Kastings-Novak did not have prescription-writing power and that Hakala in fact prescribed pain medicine to plaintiff, plaintiff's retaliation claims fail.

**VII. Conclusion**

Summary judgment will be granted to defendants.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment on plaintiff's retaliation claim (#93) is GRANTED.

Dated this  16th  day of December, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE